# United States District Court

# Central District Of California

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANCISCA RODRIGUEZ GAMBOA,<br><br>Defendant. | Case No. CR 18-00379-ODW<br><br>**ORDER AND REPORT ON FACTUAL FINDINGS FOLLOWING LIMITED REMAND FROM THE NINTH CIRCUIT,** |

## I.      PROCEDURAL HISTORY

On January 29, 2015, Gamboa, a citizen of Mexico, was found in Los Angeles County.  She had been residing in the United States illegally since 1995.  Defendant Gamboa was charged by way of a single count information with violation of title 8 U.S.C. §§1326(a), (b)(2),  being an illegal alien found in the United States following deportation.  On August 24, 2018, the defendant, Gamboa, pled guilty.  A month following her guilty plea, she filed a motion to withdraw that plea with a request that the Information be dismissed.  Both motions were granted.

1

ORDER ON REMAND

Her earlier removal was based on her January 10, 2011, conviction of the following felonies: 11378 H&S: Possession of a controlled substance for sale (methamphetamine); 11370.1(a) H&S: Possession of a controlled substance w/firearm; 12280(b) PC: Possession of assault weapon; and 273a(a) PC: Child endangerment. Gamboa was sentenced to six years' state prison, in California Superior Court, County of Los Angeles (LASC), case number BA372131-2.

The motion to withdraw her guilty plea [DE-28] was based on the argument that five days after her guilty plea, the Ninth Circuit issued its opinion in *Lorenzo v. Sessions*, 902 F.3d 930 (9th Cir. Aug. 29, 2018)[i], holding for the first time that California Health and Safety Code section 11378's definition of methamphetamine is facially overbroad because it encompasses more types of isomers of methamphetamine, e.g. geometric isomers, than does the federal Controlled Substances Act, and thus methamphetamine convictions do not meet the Immigration and Nationality Act's definition of a controlled substance. **Because Ms. Gambo's 2011 methamphetamine conviction under §11378 was the sole basis of her removal from the United States,** her order of removal was unlawful under *Lorenzo*, and the information must be dismissed under §1326(d).

On December 17, 2018, based on the holding in *Lorenzo I*, the Court granted the motion permitting Ms. Gamboa to withdraw her guilty plea, setting aside her conviction and dismissing the Information. [DE-49 & 50]. On January 16, 2019 the government filed a timely Notice of Appeal [DE-58]. Shortly thereafter, the Ninth Circuit withdrew its opinion in *Lorenzo I*, (913 F.3d 930 (9th Cir.2019)), and replaced

1   it with a memorandum disposition, *Lorenzo v. Whittaker ("Lorenzo II"),* 752 F.App'x

2   482 (9th Cir 2019).  Like *Lorenzo I,* the memorandum disposition reached the same

3   conclusion without addressing the factual argument posed by the government that

4   while facially the California statute would appear to be categorically  broader than

5   the Controlled Substance Act 21 USC § 812, the difference was illusory.   The

6   California statute included geometric isomers of methamphetamine, which the

7   government argued, do not exist. Carrying this premise to its logical conclusion, if

8   there are in fact no geometric isomers of methamphetamine, California does not

9   punish conduct not proscribed by federal statute and is not, therefore categorically

10  broader than the Controlled Substances Act.  Because this issue was not addressed

11  by the district court, the matter was remanded to the trial court specifically to make

12  the determination as to the validity of the government's argument. *United States*

13  *v. Rodriguez-Gamboa*, 946 F.3d 548, 553 (9th Cir. 2019).  The Circuit Court affirmed

14  the district court's decision to permit Gamboa to withdraw her guilty plea, but

15  vacated the order dismissing the Information.

16                    II.        **EVIDENTIARY HEARING ON REMAND**

17          On February 24, 2020 the Court held an evidentiary hearing to address the

18  single question whether geometric isomers of methamphetamine exist.  Testifying

19  at the hearing were experts in organic chemistry retained by the government.

20  Appearing, testifying and being subjected to cross-examination by Defendant

21  Gamboa were: Dr. Travis Williams, Professor of Chemistry at USC; Brian Stoltz,

22  Ph.D., Professor of Chemistry at Cal Tech; Daniel Willenbring, Ph.D.,  an analyst with

1    the Drug Enforcement Administration, Diversion Control Division.

2         Dr. Stoltz earned his B.S.in Chemistry and his B.A. in German from Indiana

3    University of Pennsylvania in 1993, and his Ph.D. in Organic Chemistry from Yale.

4    He also held a post-doctoral appointment at Harvard from 1998 to 2000.  He has

5    published over 250 articles relating to chemistry and is an associate editor of the

6    Beilstein Journal of Organic Chemistry, an international, peer-reviewed, Open

7    Access Journal publishing research and reviews in all areas of organic chemistry.

8         Dr. Daniel Willenbring, is a Drug Science Specialist, Drug & Chemical

9    Evaluation Section, Diversion Control Division of the DEA. He received a dual

10   undergraduate degree in Chemistry and Computer Science and his doctorate in

11   Organic Chemistry.  He completed his post-doctoral fellowship at the University of

12   Pittsburgh sponsored by the NIH.

13        Dr. Travis Williams, Professor of Organic and Organometallic Chemistry at

14   USC, earned his B.S. from Cal Tech in 1998 and his Ph.D. in Organic Chemistry from

15   Stanford in 2005, and was awarded an NIH Postdoctoral Fellow from 2005 to 2007.

16   **A.  DR. STOLTZ**

17        As an example of the complexity of the subject matter, quoted here are the

18   conclusions of Dr. Stoltz and his rationale for those conclusions.  It should be noted

19   that all three chemists held the same view supporting the government's position,

20   based on the same factual assumptions.  In his Declaration, Dr. Stoltz set forth the

21   scope of his assignment from the government.  This can be found in Paragraph 2 of

22   Govt's Exh 5, [DE-77.]  "I was asked to provide an opinion relating to whether

23

24                                              4

25

'geometrical (diastereomeric) isomers' of methamphetamine exist.  As set forth below, aside from constitutional isomers, only two isomers of methamphetamine exist, and they are enantiomers of each other.   The enantiomers of methamphetamine are optical isomers; they are not geometrical or diastereomeric isomers."   During the evidentiary hearing, Dr. Stoltz was asked to read from his Declaration, specifically paragraph 8. of  Govt's Exh. 5, [DE-77.]

> The stereoisomers for methamphetamine are two enantiomers named levomethamphetamine and dextromethamphetamine, also known as minus methamphetamine and plus methamphetamine.   In the case of methamphetamine these enantiomers are optical isomers.  There are no other stereoisomers of methamphetamine and enantiomers would never be considered diastereomers.   In other words, **geometrical diastereomeric isomers of methamphetamine do not exist.**  (Transcript of hearing at p.33, [DE-82], Emphasis added.)

Later, with the use of a plastic model, he demonstrated why it is impossible for there to be a methamphetamine molecule that is a geometric isomer.

"Again, those definitions, the CIS and TRANS isomer and the geometrical isomer depend on having particular structural elements present in the molecule. And, so, the methamphetamine molecule doesn't have those, the rigid cycloalkane or the olefin.  And, so, they're really nothing but single bonds here.  And, so, these rotate freely and **would never result in a geometrical isomer."** (Trans. at p.46, DE-82, Emphasis added.)

5

## B. DR. WILLIAMS

Indicated that when he was contacted by the USAO to opine about geometric isomers of methamphetamine he first went to the so-called "Gold Book", published by the International Union of Pure and Applied Chemistry ("IUPAC") which in his words "is the most authoritative definition of chemical nomenclature that is available anywhere." It is the <u>Compendium of Chemical Terminology</u> (Exh. 4 of DE-77.) In addressing the question of the meaning of "geometric isomer" he consulted the Gold Book to determine, to the extent possible, the California Legislature's understanding of what that term might reasonably mean while drafting the relevant code section. He learned that the IUPAC strongly recommended avoidance of the use of the term geometric isomer as obsolete. (*Id*. at p. GEX 98)  It apparently has been replaced with the term "diastereomers." (Trans. at pp. 57, 72-73, 87, DE-82).

In his research of all of the definitions of geometric isomers in the Gold Book, he reached the following conclusion:

> We are fortunate in the way that definition is constructed, that it very exclusively and specifically defines the chemical phenomenon that can give rise to geometrical isomerism.  And we can systemically eliminate each of those phenomenon as impossible for the structure of methamphetamine. (Trans. at pp. 73, DE-82)

He indicated that he had reviewed the Declarations of Drs. Stoltz and Willenbring and agrees with their conclusions on the question presented.  In

explaining his opinion, first he read from his declaration:

> While methamphetamine has many transient geometrical confirmations differing by bond rotations at room temperature, none of these contain a cycloalkane or olefin group.

In clarifying the importance of this statement he stated:

> Because the Gold Book - - when the international committee took up the subject of defining how the word "geometrical' isomer was to be used, they strictly said that a geometrical isomer is a case of CIS-TRANS isomerism, and that CIS-TRANS isomerism specifically regarded a carbon-carbon double bond or a ring.

> We're fortunate in this case that because they were specific and limiting in the language they chose.  We can individually disqualify the structure of methamphetamine as conforming to any of those particular phenomena.

He concluded by confirming that there are no geometric isomers of methamphetamine.  (Trans. at pp. 79-80, DE-82)

### C.  Dr. Willenbring

Dr. Daniel Willenbring is a Drug Science Specialist, Drug & Chemical Evaluation Section, Diversion Control Division of the Drug Enforcement Administration. He has read the Declarations of Drs. Stoltz and Williams and agrees with their conclusions that there are no geometric isomers of methamphetamine. (Trans. at p. 95, DE-82).

He explained that "optical isomers" of methamphetamine are covered under

the Federal Controlled Substances Act ("CSA").   The AUSA asked: "As a hypothetical, if you were to amend the federal controlled substances act so that for methamphetamine it covered both optical and geometric isomers, would that make any difference?"  He responded "No, it would not [. . . ] because there are no geometric isomers of methamphetamine. *Id*. at p. 95

He noted however, there are geometric isomers of cocaine, which are regulated under the CSA and demonstrated why such isomers of methamphetamine do not and cannot exist. (Trans. at pp. 95-97, DE-82). **Methamphetamine has no geometric isomers.**   This is the same conclusion reached by Dr. Halberstadt. (*Id* at p. 115.)  On cross-examination he remained unwavering in his opinion.

### III.      FINDINGS OF FACT

A. The Court finds the chemistry experts' declarations and hearing testimony credible and compelling.  Each of the experts possessed superior education and experience in organic chemistry to lend gravitas to their opinions.  Each was familiar with and consulted the International Union of Pure and Applied Chemistry, ("IUPAC") ostensibly the authoritative work on the definition and nomenclature of chemical terms.  (Id. at p.72.)

B. While under no obligation to do so, the Defendant offered no rebuttal experts or evidence.  However, Defendant skillfully cross-examined each of the experts on their opinions and the reasons for those opinions.

C. Each of the experts concluded there are no "geometric," "geometrical," or

"geometrical (diastereomeric) isomers" of methamphetamine.  (Id. at pp. 28-33, 80, 95-96.)

1. The structure of the methamphetamine molecule makes geometric isomers of the molecule impossible. (*Id*. at p.28.)

2. Dr. Stoltz testified as to his rationale for concluding there are no geometric isomers of methamphetamine because: " . . . the simple explanation is that methamphetamine doesn't have any of the structural requirements that would allow for a geometrical constraint and therefore geometrical isomer.  It simply doesn't have them,  and so, again, to a chemist looking at this structure, I think it's – and knowing the definition of a geometrical isomer, it's quite obvious actually that there are no geometrical isomers of this compound." *Id*. at p. 28.

3. Geometric isomers are one of two broad classes of stereoisomers.  The other is the optical isomer. *Id.* at p. 65. Dr. Stoltz reading from <u>Hawley's Condensed Chemical Dictionary</u>, Govt's Exh 5. to the hearing exhibits.

D. These conclusions are supported by  authoritative dictionaries and texts.  Each of the experts identified the <u>International Union of Pure and Applied Chemistry, Compendium of Chemical Terminology</u>.  Also cited was <u>Hawley's Condensed Chemical Dictionary,</u> *Id*.

E. The term "isomer" refers to molecules that contain the same atoms, but where those atoms are connected in a different spatial arrangement. Exh. 4,

9

p. GEX-99.  Different terms are used to describe the relationship of atoms in a given type of isomer.

> 1.    "Optical isomer"  is an obsolete synonym for stereoisomers with different observable optical properties.  They should be described as diastereoisomers or enantiomers.  Use of the term optical isomers is strongly discouraged.
>
> 2.    Enantiomer describes isomers that are non-superimposable mirror images of one another:  that is, molecules with the same chemical formula, but with atoms arranged differently in three-dimensional space such that the two isomers cannot be reoriented to fit directly over one another.  DEX-96
>
> 3.    Diastereomer is a broad catch-all term, referring to any stereoisomer that is not an enantiomer.  GEX-95.  Diastereomers with observable optical properties are also "optical isomers."  Such isomers would include stereomers with observable optical properties that are not superimposable mirror images of one another  Hawley's GEX 111-112.
>
> 4.    Diastereomer without observable optical properties, however, are not "optical isomers."  Diastereomers that do not have observable optical properties can include "geometric isomers".  Trans. p.22, DE-82."
>
> 5.    "Geometric isomers" refers to a type of isomer where atoms or

groups of atoms are locked in a particular spatial position either on the same side [CIS]or on the opposite side [TRANS] of a rigid structure – a double bond, olefin, or saturated ring. *Id.* GEX 93, 98, IUPAC, GEX 115-116 (Hawleys)   Because methamphetamine lacks these structural features, geometric isomers are impossible.

6.      Deuterium is a rare, naturally occurring form of hydrogen (an isotope of hydrogen) that has one extra neutron.[1] The relevant atom is still hydrogen.  However, because it has a slightly different atomic makeup, it has a special name.   "The 2-H, the Deuterium, occurs in natural sources.   About 1 in 5,000 hydrogen atoms in nature is a deuterium.  (Trans at p. 33-37.) So, in any batch of methamphetamine that's ever been produced, 1 in every 5,000 atoms of hydrogen, is a deuterium.   And that occurs everywhere on earth in roughly that amount."   (*Id*.) Conventionally, chemists do not consider hydrogen isotopes when analyzing what isomer exist for a given molecule. (Trans at pp. 61-61, 98.)

The DEA does not take deuterium into account when considering whether or not a chemical structure falls within the federal Controlled

---

[1] Deuterium is not relevant to the court's inquiry or within the scope of the Circuit's remand order.  It was covered during the course of the hearing because the parties' interests extend beyond the parameters of this case.  The Court, however, is constrained by the issues in the case before it.

Substances Act.   (Trans. at p. 98.)   Deuterated compounds are "regulated just the same as their parent compound(s)."  Trans at p. 98.  Even considering such isotopes (which is contrary to chemical convention),  methamphetamine  still  has  no  "geometric"  or "geometrical" isomers.   Trans at pp.35, 37.)   Geometric isomers remain  impossible  given  the  structure  of  the  methamphetamine molecule.  (Trans at p.36,)

Deuterated isotopomers or methamphetamine (isomers created by the presence of deuterium) would all qualify as "Optical isomers."

Trans at pp. 39, 52-53, 92.   Such isotopomers are referred to as "deuterium-labeled  methamphetamine)  and  are  covered  by  the federal CSA. (Trans at p.98,)

## IV.   RELEVANT STATUTES

Gamboa's prior felony conviction which resulted in her earlier removal was Health & Safety Code Section 11378, possession for sale of a controlled substance, specifically methamphetamine.   Methamphetamine is listed as a Schedule II controlled substance under both state and federal law.   Where the statutory schemes differ is in how the isomers of methamphetamine are treated.

California Health and Safety Code Section 11055 provides:

Schedule II; substances included:

(a) The controlled substances listed in this section are included in Schedule II.

. . .

(d) Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:

. . .

(2)     *Methamphetamine, its salts, isomers, and salts of its isomers.*   (Emphasis added.)

Health & Safety Code § 11033. Isomer: As used in this division, except as otherwise defined, the term "isomer" includes optical and geometrical (diastereomeric) isomers.   (Emphasis added.)

Under federal law, the term "methamphetamine isomer" means the optical isomer only.  See 21§ USC 802(14).

As can plainly be seen by the unambiguous text of the statute, possession of a substance which contains either the optical **or** the geometric isomers of methamphetamine is theoretically punishable under state law.  Under federal law, only optical isomers of methamphetamine are prohibited.  Thus, it would appear that the state statute is facially broader than its federal counterpart.  That is, a broader range of theoretical conduct is punishable under state law.  However, according to the government and supported by the government's experts, there is no realistic

probability of punishment for possession of geometric isomers of methamphetamine

under state law (or at all).  Based on evidence adduced during the hearing, the Court

agrees.

IT IS SO ORDERED.
DATED: April 15, 2020

_____
The Honorable Otis D. Wright II
United States District Court Judge

14